```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
SAMANTHA LAMBUI,

                Plaintiff,
                                        MEMORANDUM & ORDER
        -against-                       14-CV-6457(JS)(AYS)

JAMES C. COLLINS, ROBERT LIMMER,
ROSEMARIE DAVITT, KEELEY WEIR,
UBS AG, and UBS FINANCIAL
SERVICES, INC.,

                Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:          Jon-Paul Gabriele, Esq.
                        Dell & Dean, LLC
                        1325 Franklin Ave., Suite 100
                        Garden City, NY 11530

For Defendants:
James C. Collins        David Alan Gehn, Esq.
                        Matthew B. Baum, Esq.
                        Gusrae, Kaplan, Nusbaum, PLLC
                        120 Wall Street, 25th Fl.
                        New York, NY 10005

Robert Limmer,
Rosemarie Davitt,
Keeley Weir, UBS A.G.,
And UBS Financial
Services, Inc.:         Francis X. Dee, Esq.
                        McElroy, Deutsch, Mulvaney &
                          Carpenter LLP
                        88 Pine Street, 24th Floor
                        New York, NY 10005
```

SEYBERT, District Judge:

        Plaintiff Samantha Lambui ("Plaintiff") commenced this action on September 5, 2014, alleging, <u>inter</u> <u>alia</u>, that corporate

defendants UBS AG, UBS Financial Services Inc. ("UBSFS"), and individually named defendants Robert Limmer ("Limmer"), Rosemarie Davitt ("Davitt"), and Keeley Weir ("Weir" and collectively, "UBSFS Defendants"), and James C. Collins ("Collins" and collectively "Defendants"), engaged in employment discrimination, sexual harassment, retaliation, aiding and abetting, discriminatory conduct, negligent hiring and supervision in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290 et seq.; 42 U.S.C. § 1981, and the New York City Human Rights Law, N.Y. City Admin. Code. 8-101 et seq. ("NYCHRL"). (Compl. ¶ 1.)

Presently before the Court are motions to dismiss pursuant to Federal Rule 12(b)(1) for lack of subject-matter jurisdiction and Federal Rule 12(b)(6) for failure to state a claim by both the UBSFS Defendants (Docket Entry 31) and Collins (Docket Entry 33). For the following reasons, Defendants' motions are GRANTED.

BACKGROUND[1]

Plaintiff, a female residing in Suffolk County, New York, met defendant Collins in the Fall of 2012 at a bar named Katie Mc's where Plaintiff was a bartender. (Comp. ¶¶ 5, 22-23.) Collins informed Plaintiff that he worked as a Financial Advisor

---

[1] The following facts are drawn from the Complaint and are assumed true for the purpose of this Memorandum and Order.

2

("FA") at the Melville, Long Island branch of UBSFS and that she should apply for a job. (Compl. ¶ 24.). In December 2012, at Collins' suggestion, Plaintiff applied for a position as a paid intern with UBSFS. (Compl. ¶¶ 24-25.) The intern position for which Plaintiff applied was unique in that it was one that was "broker-paid" or "FA-paid," meaning that the position is dependent on a FA's independent agreement to financially support the position. (Compl. ¶¶ 39, 86, 150-51, 153.) If the FA terminates his or her UBSFS employment, the position loses its financial basis, and absent any other financial support, is eliminated. (Compl. ¶¶ 39, 86, 150-51, 153.)

On February 25, 2013, Plaintiff started her first day as a "broker-paid" intern. (Compl. ¶ 39.) As a "broker-paid" intern, Plaintiff was paid $10 per hour and was expected to work with Collins on a limited hour basis, approximately 20 hours per week. (Compl. ¶ 39.) Plaintiff alleges that even prior to employment at UBSFS, Collins engaged in inappropriate behavior towards her, including attempting to kiss her following a lunch they had together on January 4, 2013, as well as "sexist, degrading, [and] insulting comments in the texts" exchanged between them. (Compl. ¶¶ 28-29, 32.)

Plaintiff alleges that Collins' sexual advances and unprofessional conduct continued after her hiring at UBSFS. In March 2013, Collins asked Plaintiff to meet him at a hotel and

3

have sex with him in exchange for a "bonus" in the form of designer shoes. (Compl. ¶ 43.) On April 4, 2013, Collins invited Plaintiff to his Long Island home to "get drunk and have sex while his wife and children were in New York City." (Comp. ¶ 45.) Plaintiff ignored the invitation. (Compl. ¶ 45.) On April 5, 2013, Collins apologized and asked Plaintiff to join him on his upcoming trip to Florida. (Compl. ¶ 48.) Plaintiff did not go. (Compl. ¶ 48.) Shortly after the invitations, Plaintiff had a face-to-face meeting with Collins where she "informed him yet again that his behavior was extremely inappropriate, made her feel uncomfortable. . . . ." (Compl. ¶ 49.) Collins indicated that he understood Plaintiff's complaints and "that he would start a Human Resources file on [the] matter in accordance with UBSFS policy, and that he [ ] promise[d] not to speak to her in that manner going forward. (Compl. ¶ 49.)

In May 2013, Collins offered to drive with Plaintiff and purchase her a designer bag as a bonus for her superior work. (Compl. ¶ 50.) On the drive back to the office, Collins demanded a sexual favor in return for the purchase of the bag, which Plaintiff refused. (Compl. ¶ 51.) Collins ignored Plaintiff's demands to be driven back to the office and drove to a park near the office. (Compl. ¶ 52.) Plaintiff alleges that Collins forced himself upon her and kissed her while she "screamed, cried, curled up in the fetal position, while begging for Mr. Collins to take

4

her back to the office." (Compl. ¶ 52.) As a result of this incident, Plaintiff "missed scheduled work due to emotional distress." (Compl. ¶ 53.)

On June 17, 2013, Plaintiff received an email from UBSFS informing her that her internship would be ending on June 28, 2013. (Compl. ¶ 56.) Plaintiff spoke to Collins to discuss her continued employment. (Compl. ¶ 56.) During that conversation, Collins told Plaintiff that she would receive a promotion and be hired part-time. (Compl. ¶ 56.) On June 21, 2013, Plaintiff accepted a position with UBSFS as a part-time Client Services Associate ("CSA") working with Collins. (Compl. ¶¶ 56-57.)

Plaintiff alleges that on June 21, 2013, just hours after Plaintiff signed her offer of employment, Collins contacted her to meet him at a marina near his Long Island home. (Compl. ¶ 58.) Plaintiff responded "stop thinking about me" and thereafter ignored Collins' repeated attempts to communicate with her throughout the remainder of that day. (Compl. ¶¶ 58-64.) The next day Collins again propositioned Plaintiff for sex and when he was ignored, gave Plaintiff an "ultimatum that she needed to go to his marina [sic] at 12:30AM to perform sexual acts with [him], and that she would lose her job (which she had just accepted) if she did not." (Compl. ¶ 66.) Plaintiff ultimately responded and told Collins ". . . I quit." (Compl. ¶ 68.)

5

Collins finally responded to Plaintiff two days later on June 24, 2013, when he asked to meet Plaintiff somewhere other than at the office to discuss Plaintiff's statement that she was quitting. (Compl. ¶ 70.) That same day, Plaintiff contacted Defendant Davitt, the Assistant Branch Manager for the Melville office, and informed her that she wished to file a complaint against Collins. (Compl. ¶¶ 9, 71.)

The following day Plaintiff met with Davitt and Defendant Limmer, Branch Manager of Melville office, and informed them that she was being sexually harassed by Collins. (Compl. ¶¶ 8, 72-73.) Davitt and Limmer advised Plaintiff that she was terminated, and because she was terminated, ". . . there was no purpose in making any further complaints." (Compl. ¶¶ 72-73.) Subsequent to Plaintiff's meeting with Davitt and Limmer, UBSFS initiated an investigation of her complaint and Plaintiff met with Defendant Weir, Director of Human Resources, in Weir's Manhattan office on June 26, 2013. (Compl. ¶¶ 10, 74.)

On August 7, 2013, a telephone conference was held in which Weir informed Plaintiff that UBSFS's internal investigation had corroborated her information and had concluded that Collins' conduct towards Plaintiff had been unprofessional and had violated UBSFS's internal policies. (Compl. ¶ 76.) In light of the findings, UBSFS terminated Collins' employment for violation of UBSFS's internal policies. (Compl. ¶ 76.)

Following Collins' termination, Plaintiff's position no longer existed because Plaintiff's position was contingent upon the employment of Collins. (Compl. ¶ 160.) Thus, subsequent to Collins' termination, UBSF terminated Plaintiff. (Comp. ¶ 76.)

Plaintiff alleges that she endured employment-related discrimination, sexual harassment, retaliation, sexual battery, civil battery, civil assault, wrongful imprisonment, negligent hiring, wrongful termination, and illegal employment practices in violation of the NYSHRL, the NYCHRL, and 42 U.S.C. § 1981. (Compl. ¶¶ 92-141, 146-175.) In addition, Plaintiff claims that the Individual Defendants aided and abetted the alleged discrimination under the NYSHRL and NYCHRL (Compl. ¶¶ 142-145), and are also liable under a theory of respondeat superior. (Compl. ¶¶ 176-178.)

Defendants argue Plaintiff's claims under the NYCHRL fail because the statute only affords protections for residents or those employed within New York City and because Plaintiff is neither a resident of New York City nor worked at a New York City UBSFS location. (UBSFS Defs.' Br., Docket Entry 31-1, at 9-13) (Collins' Br., Docket Entry 33-1, at 5-8.) Thus, Defendants move for dismissal of the claims asserted under the NYCHRL for Sexual Harassment and Gender and/or Age Discrimination (Counts V or XI) and Retaliation (Counts VI and XII), as well as the portion of Count XIII asserting a claim for Aiding and Abetting Discrimination

7

pursuant to the NYCHRL, and the portion of Count XV asserting a claim for a per se violation of NYCHRL.

DISCUSSION

Before addressing the merits of Defendants' motions, the Court will discuss the applicable legal standards.

I. Legal Standards

A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other material beyond the pleading to resolve jurisdictional questions. See Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiff because subject matter jurisdiction must be shown affirmatively. See id.; Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1998); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Morrision, 547 F.3d at 170.

B.  Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949-50; Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; Harris, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F. 3d 67, 71 (2d Cir. 1998). However, this limitation has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v.

9

Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

II. Plaintiff's NYCHRL Claims

Plaintiff has set forth six claims pursuant, at least in part, to the NYCHRL, claiming that the alleged discriminatory conduct had an impact within New York City's boundaries. (See Pl.'s Br., Docket Entry 38, 11-16.) Defendants move to dismiss Plaintiff's NYCHRL claims on the basis that Plaintiff has failed to show that any alleged discriminatory conduct had an impact within New York City, arguing that Plaintiff allegedly faced discriminatory, and/or, retaliatory conduct only on Long Island, where she lived and worked. (UBSFS Br., Docket Entry 31-1, at 11.)

A. Impact of the Alleged Discrimination

To state a claim under the NYCHRL, "a plaintiff must allege that he was discriminated against by the defendant within New York City." Salvatore v. KLM Royal Dutch Airlines, No. 98-CV-2450, 1999 WL 796172, at *16 (S.D.N.Y. Sept. 30, 1999). Courts have consistently held that the plaintiff must "plead and prove that the alleged discriminatory conduct had an impact in New York." See Hoffman v. Parade Publ'ns, 15 N.Y.3d 285, 291, 933 N.E.2d 744, 747, 907 N.Y.S.2d 145, 148 (2010). To determine where the alleged discriminatory conduct occurred, "courts have looked to the

10

location of the impact of the offensive conduct." Salvatore, 1999 WL 796172, at *16; see also Regan v. Benchmark Co. LLC, No. 11-CV-4511, 2012 WL 692056, at *13–14 (S.D.N.Y. Mar. 1, 2012) (finding that defendants' discriminatory conduct had an impact in New York City because all aspects of plaintiff's employment connected her to the company's New York City office, even after she was transferred to an office outside the city).  Furthermore, "it is the site of impact, not the place of origination, that determines where discriminatory acts occur." Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 362 (S.D.N.Y. 2007).

Where the discriminatory conduct occurs outside the geographical bounds of New York City, courts have found that the impact requirement is satisfied if the plaintiff alleges that the conduct has affected the terms and conditions of plaintiff's employment within the city.  See, e.g., Regan, 2012 WL 692056, at *13–14; Chin v. CH2M Hill Companies, Ltd., No. 12-CV-4010, 2012 WL 4473293, at *3 (S.D.N.Y. Sept. 28, 2012) (finding that defendants "failed to show that there is no possibility that there was an impact in New York," since the impact of defendants' alleged conduct may have been felt in New York City); Int'l Healthcare Exch., 470 F. Supp. 2d at 362–63 (at summary judgment stage, finding that defendants' alleged retaliatory termination, which occurred during a business trip in Paris, affected plaintiff's

11

employment in New York City, and therefore could form the basis of an NYCHRL cause of action).

1. Incidents with Collins

Plaintiff has clearly pled that she is a "citizen of Suffolk County, New York" (Compl. ¶ 5), and that she was employed as a "broker-paid" intern at UBSFS's Melville, Long Island branch. (Compl. ¶¶ 24, 39, 86, 150-51, 153.)  Further, most of Collins' sexually harassing and discriminatory conduct occurred on Long Island.  While Plaintiff does allege a January 2013 New York City trip in which Collins made sexual advances (Compl. ¶ 28), and a March 2013 work assignment in New York City (Compl. ¶¶ 42-43), the rest of the Complaint details a number of incidents involving Collins' sexual advances all occurring on Long Island. It is abundantly clear that the vast majority of Collins' discriminatory and harassing conduct occurred on Long Island.  Thus, Plaintiff has failed to show that Collins' alleged conduct affected the terms and conditions of her employment within New York City, as Plaintiff has failed to adequately allege that she was employed within New York City.

2. Weir Meeting

Plaintiff's only touchstone to New York City are her meetings with Weir, at Weir's Manhattan office, which occurred after Plaintiff had lodged her complaints against Collins. (Compl. ¶¶ 74-75.)  These meetings led to Plaintiff's ultimate termination.

(Compl. ¶ 76.) While New York City may be the location of Plaintiff's termination, it is of no consequence here because, it is the impact of the adverse action, and not the location where acts leading to the discrimination occur that gives rise to a claim under the NYCHRL. Shah v. Wilco Sys., Inc., 27 A.D.3d 169, 176, 806 N.Y.S. 2d 553, 558 (1st Dep't 2005) ("[T]he locus of the decision to terminate here is of no moment. What is significant is where the impact is felt. Thus, even if the termination decision had been made in New York City, the NYCHRL would not apply since its impact on [plaintiff] occurred in New Jersey, not within the five boroughs."); Salvatore, 1999 WL 796172 at *16 ("The fact that certain acts leading to discrimination may occur in New York City will not necessarily give rise to a claim under the [NYCHRL]."). Indeed, the argument that a plaintiff could invoke the NYCHRL because the "decision to terminate" was made in New York City was explicitly rejected by the New York Court of Appeals in Hoffman. 15 N.Y.3d at 290-91, 933 N.E.2d at 746-47, 907 N.Y.S.2d at 147-48. The impact analysis "confines the protections of the NYCHRL to those who are meant to be protected—those who work in the city." Hoffman, 15 N.Y.3d at 291, 933 N.E.2d at 747, 907 N.Y.S.2d at 148.

Here, Plaintiff was employed by the UBSFS Melville, Long Island branch, and her injuries, including her termination, all arose out of her employment at the Melville location. Hoffman

13

makes clear that the dispositive factor in an impact analysis is the locus of where the discrimination was felt by the plaintiff. Therefore, although the decision to terminate Plaintiff was physically made within New York City, its impact was felt on Long Island. Thus, Plaintiff has no basis to invoke the protections of the NYCHRL. Accordingly, Defendants' motions to dismiss these claims are GRANTED.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Docket Entries 31 and 33) are GRANTED. Plaintiff's claims asserted under the NYCHRL for: (1) Sexual Harassment (Count V), (2) Retaliation (Counts VI, XII), and (3) Gender and/or Age Discrimination and Harassment (Count XI), as well as the portion of Count XIII asserting a claim for Aiding and Abetting Discrimination pursuant to the NYCHRL, and the portion of Count XV asserting a claim for a per se violation of NYCHRL are DISMISSED WITH PREJUDICE.

SO ORDERED.

/s/ JOANNA SEYBERT  
Joanna Seybert, U.S.D.J.

Dated:    September __30__, 2015  
         Central Islip, New York